1
2
3
4
5
6
7
8
9
10

Lenore L. Albert, Esq.   SBN 210876
LAW OFFICES OF LENORE ALBERT
7755 Center Avenue, Suite #1100
Huntington Beach, CA 92647
Telephone (714) 372-2264
Facsimile (419) 831-3376
Email: lenalbert@interactivecounsel.com

Attorney for Plaintiff, LENORE ALBERT, an individual

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LENORE ALBERT; and ROES 1 through 50,<br><br>        Plaintiffs,<br><br>vs.<br><br>STATE BAR OF CALIFORNIA; CITY OF HUNTINGTON BEACH,  a governmental entity; JAYNE KIM; CELESTE PASILLAS; and DOES 1 through 10, inclusive,<br><br>        Defendants. | CASE NO. SACV 14-1905<br><br><br>**COMPLAINT**<br><br>**[Demand for Jury Trial as to Part]**<br>1. 42 USC § 1983 (Fourth Amendment)<br>2. 42 USC § 1983 (First Amendment)<br>3. Public Disclosure of Private Facts<br>4. False Light<br>5. Defamation<br>6. Tortious Interference with a Contract<br>7. Cal Bus & Prof Code §17200 Violation<br>8. Cal Bus & Prof Code § 17200 Violation |

    Plaintiffs LENORE ALBERT, and ROES 1 though 10, (referred to as "plaintiff" or "plaintiffs"), by and through their attorney, now brings this action against defendants, STATE BAR OF CALIFORNIA; CITY OF HUNTINGTON BEACH,  a governmental entity; JAYNE KIM; CELESTE PASILLAS; and DOES 1 through 10, and each of them so captioned, (collectively the "Defendants") and alleges the

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**1**
**COMPLAINT**
Albert v State Bar of California          SACV 14-1905

following on information and belief, except as to those allegations which pertain to the Plaintiffs and are within their personal knowledge:

## JURISDICTION

1.    The Court has subject matter jurisdiction over this action under 28 USC § 1332 wherein this action is based on a federal statute.

## PARTIES

2.    Plaintiff Lenore Albert, who at all times mentioned herein relevant to this complaint, was a resident of Orange County, California and licensed to practice law in this state (SBN #210876).

3.    Defendant STATE BAR OF CALIFORNIA is an agency, with its principal place of business in California and regularly conducts business in the State of California.

4.    Defendant CITY OF HUNTINGTON BEACH is a public governmental entity that employed Officer Doe 1 and Doe 2 of the Huntington Beach Police Department ("HBPD") who were acting under color of law.

5.    Defendant Jayne Kim, who at all times mentioned herein relevant to this complaint, was a resident of Los Angeles County, California and was employed by the State Bar of California and was acting within the scope of her employment at all times mentioned in this complaint, unless otherwise specifically designated.

6.    Defendant Celeste Pasillas, who at all times mentioned herein relevant to this complaint, was a resident of Los Angeles County, California and was employed by the State Bar of California and was acting within the scope of her employment at all times mentioned in this complaint, unless otherwise specifically designated.

7.    Defendant State Bar of California, Jayne Kim, Celeste Pasillas, and City of Huntington Beach were acting jointly, and were acting under color of law in relation to the First and Fourth Amendment violations alleged below.

**2**
**COMPLAINT**
Albert v State Bar of California          SACV 14-1905

8.     Plaintiff does not know the true name and capacity of the defendants DOES 1 through 10, inclusive, and as such names said defendants by such fictitious names. Plaintiff will amend the complaint to state the true name and capacity of the DOE defendant(s) when such information is ascertained.

9.     Plaintiff is informed and believes and alleges thereon that each defendant is responsible in some manner for the occurrences alleged in this complaint, and that plaintiff's damages were proximately caused by the defendants.

10.     Plaintiff is further informed and believes and alleges thereon that each defendant was the agent, servant, representative, and/or employee of their co-defendants, and in doing the things hereinafter alleged were acting in the scope of their authority as agents, servants, representatives, and/or employees, and with the permission and consent of their co-defendants.

11.     Additionally, plaintiff is informed and believes and alleges thereon that each defendant assisted, aided and abetted, adopted, ratified, approved, or condoned the actions of every other defendant and that each corporate defendant, if any, was acting as the alter ego of the other in the acts alleged herein.

## FACTUAL ALLEGATIONS

12.     Plaintiff is a practicing litigation attorney.

13.     She regularly represents consumers and is an advocate for a person's rights.

14.     On or about November 10, 2014 the State Bar, directed, authorized, consented, permitted, had knowledge of and/or acquiesced in the HBPD entering Ms. Albert's office and taking client boxes without a search warrant, probable cause, or consent.

15.     Ms. Albert was shocked, horrified, embarrassed, and mortified at this occurrence.

**COMPLAINT**
Albert v State Bar of California          SACV 14-1905

16.     Plaintiff later discovered that Jayne Kim, the assigned counsel, was married to a Santa Monica Police Officer that just finished a murder case where the suspect was from Huntington Beach, California.

17.     Plaintiff also learned that Jayne Kim, herself was a former prosecutor for the City of Los Angeles and then worked for the US Attorney's office in Los Angeles before gaining her position with the State Bar.

18.     Plaintiff is informed and believes and alleges thereon that this is part of ongoing harassment by the State Bar against Ms. Albert in retaliation for representing homeowners being foreclosed upon (homeowner's rights).

19.     Upon learning of the search and seizure by the HBPD, plaintiff sent the State Bar an email and fax explaining the distress of the situation and demand for an explanation, to which the State Bar never responded.

20.     Celeste Pasillas was in contact with Plaintiff prior to the incident and the only substantive response from the State Bar was from Celeste Pasillas, mainly instructing Ms. Albert to stop sending emails to Jayne Kim and to direct all communications to Pasillas instead.

21.     Ms. Albert refused on the grounds Kim was named at the top and responsible for Pasillas' actions.

22.     Plaintiff is informed and believes and alleges thereon that the HBPD was informed ahead of time that the State Bar was insisting on HBPD presence and to issue a citation number for their own use to retaliate against Albert.

23.     Celeste Pasillas was outraged that Albert was not at the office when the HBPD arrived and left a voicemail on Albert's phone on November 10, 2014 demanding to know where Ms. Albert was and why she was not there. She also said she instructed the front desk to release the files to the HBPD and former client without signing the Release of Chattel form.

24.     Instead of keeping the illegitimate use of the HBPD confidential, the State Bar made it widespread news in the local legal community by directly and/or indirectly telling attorneys David Seal and Devin Lucas, of the incident who then relayed that information to others via email.

25.     Ms. Albert sent the State Bar another fax, which the State Bar then relayed to others, including but not limited to David Seal and Devin Lucas.

26.     Neither David Seal nor Devin Lucas are employees of the State Bar or had any legitimate right to obtain this information from the State Bar.

27.     Plaintiff is informed and believes and alleges thereon that David Seal then used this information from the State Bar to get plaintiff ousted from a listserve created for mortgage defense attorney that had approximately 400 attorneys on it.

28.     Plaintiff is informed and believes and alleges thereon that Celeste Pasillas directed the former client to call the HBPD and then head over to plaintiffs office to pick up her files on or about November 10, 2014.

29.     Plaintiff is informed and believes and alleges thereon that Celeste Pasillas instructed, advised, consented to, authorized, or had knowledge of the former client specifically telling the HBPD that Ms. Albert was "unstable" and that she was "hostile" and "verbally abusive" and "under investigation" by the State Bar for "unethical" practices and they needed the HBPD to record these events and behavior as evidence thereof.

30.     Celeste Pasillas and other employees from the State Bar would send letters requesting information in short time frames, and although the letters said they would extend time, they refused to do so, creating a burden to plaintiff.

31.     Homeowner's rights cases are paper intensive.  As such, the Bar would request thousands of pages to be located, organized and transmitted to them with a full

explanation within a matter of days under threat that a complaint would be filed if plaintiff did not cooperate.

32.     No matter how much Ms. Albert begged for more time and no matter her litigation schedule the State Bar refused each request which was done over the phone.

33.     Defendants acts have taken up so much time in the law practice that it has tortiously interfered with the representation of plaintiff's other clients.

34.     After putting up with verbal demands by the State Bar with only scattered or vague and ambiguous writings time and time again,  Plaintiff sent the State Bar a letter asking that they put all of their grievances in one consolidated inquiry so that they all could be answered at the same time in order, but they have refused.

35.     Their repeated conduct is nothing short of harassment.

36.     The State Bar is on a fishing expedition to try to shut down the law office without any reasonable right to do so which is financially harming plaintiff and has the capacity to damage plaintiff by approximately $4,580,000.00.

37.     Plaintiff filed a claim against the State Bar but there was no response.

38.     None of these attorneys have any special skill, knowledge or training to even evaluate a homeowner's case much less any appreciation of the complex and emerging area of law. There is no prosecutorial immunity, because there was nothing formally being prosecuted when these actions occurred.

39.     Jayne Kim (not properly trained herself) never properly trained her investigators or other employees how to properly evaluate a homeowner's rights case.

40.     Although Ms. Albert sent the State Bar proof of her competence in this area of law, the State Bar just went ahead making up facts by substituting case names and case numbers that she was only tangentially related to, making up nonsense out of the mismatched hodgepodge, most recently demanding more information by December 8, 2014. This dog and pony show has to stop.

6
**COMPLAINT**
Albert v State Bar of California          SACV 14-1905

**FIRST CAUSE OF ACTION**
**CIVIL RIGHTS VIOLATION**
**(Against Defendants STATE BAR OF CALIFORNIA and CITY OF**
**HUNTINGTON BEACH and DOES 1 - 10)**

41.    Plaintiff incorporates paragraphs 1 through 40 as though fully set forth herein.

42.    This is an action brought under 42 U.S.C. § 1983 to obtain injunctive relief and recover damages against defendants for violation of plaintiff's right to be free of unreasonable searches and seizures under the Fourth and Fourteenth Amendments to the United States Constitution.

43.    The jurisdiction of this Court is predicated on 28 U.S.C. §§ 1331 and 1343.

44.    For the past several months the State Bar of California had been harassing Plaintiff and interfering with her office operations by making last minute administrative demands on the office with the threat of filing a complaint against her.

45.    Ms. Albert has had her own office for over thirteen years with a record of no public complaints against her with the State Bar.(Exhibit A)

46.    The State Bar used one former client to harass Ms. Albert and her staff. They had the client demand her case files of 12 bankers boxes in an unreasonably short amount of time, and then would refuse to pick them up. This required Ms. Albert to pull the voluminous files out of storage and store them at the office, to then return them to storage. These demands occurred on more than one occasions over a several month time period.

47.    On or about November 5, 2014, the State Bar once again, demanded Ms. Albert make the files available to this client.

48.    There was still no written inquiry, complaint or formal charge with regard to this client and the State Bar at the time the State Bar made this demand.

49.    It was simply another phone call by Celeste Pasillas demanding client files who said they needed them right then.

50.    Ms. Albert did what the State Bar demanded, and made the files available for pick up within 24 hours, but warned the State Bar that she was tired of this game as it took substantial time and expense to store the files in the office and continuously move them back and forth from storage.

51.    Again, just like times in the past, the client said she would show to pick up the files, then did not show the following day as promised. In fact the twelve bankers boxes of files sat in the office for one week.

52.    So on or about November 10, 2014, Ms. Albert communicated to the State Bar that the client, once again did not pick up the files, and she would send the files to the State Bar if the client did not pick them up by the end of the day.

53.    On or about November 10, 2014, Defendant CITY OF HUNTINGTON BEACH via the HBPD went to LENORE ALBERT'S office located at 7755 Center Avenue, Suite #1100, Huntington Beach, California with two officers and did more than merely "stand by" and searched and seized items from the office without a valid warrant or probable cause. (Exhibit B)

54.    The former client called the HBPD at the specific direction and instruction of the State Bar in order to create a ruse the State Bar could use to try to disbar Ms. Albert and to humiliate her as more fully alleged above.

55.    LENORE ALBERT who was not at the office at the time, was mortified and shocked to learn from the receptionist what had occurred.

56.    Plaintiff is informed and believe and allege thereon that the entrance was performed in order for the State Bar of California to further harass plaintiff and humiliate her and try to create a 'scene' or get access to information to trump up charges against her.

8
**COMPLAINT**

57.    The HBPD entered the building, took the elevator to the eleventh floor (where Ms. Albert shares a suite with attorneys and others), then eventually went back into the storage room and took the files, picked them up, put them on the elevator, went back to the first floor, took the boxes out of the elevator and walked them through the lobby in front of others, and hauled them outside.

58.    Instead of giving plaintiff any notice that the State Bar intended to have the HBPD go to her office or to object to their presence, the State Bar's employee CELESTE PASILLAS called the receptionist and instructed her to release the files without having the client sign for them.  The receptionist, Sandra, with HBPD in front of her, felt intimidated and did as instructed by the State Bar, and the police took the files and left.

59.    The State Bar and HBPD also questioned the office clerk, Alesia who is pregnant, about the costs for dollies and other private business arrangements between Ms. Albert's office and the executive suite.

60.    Plaintiff is informed and believes and alleges thereon the State Bar of California did this purposefully to embarrass, threaten and intimidate plaintiff in retaliation of plaintiff's communications earlier that day challenging the State Bar's demands where there was no written complaint, inquiry, or case filed.

61.    This was in violation of plaintiffs' rights.

62.    There was no court order, warrant or probable cause allowing the State Bar to use the HBPD in such a manner to take the property.

63.    There was no court order, warrant or authority of the State Bar to act jointly in an enforcement capacity and instruct the receptionist that she must release the files without the client signing that she obtained all of her files (a customary release of chattel form).

64.     State Bar did not even have a Special Master present to properly and independently investigate into what files were released to the former client.

65.     Then after the client received the files, the State Bar accused Plaintiff of not turning over the files.

66.     Defendants known as Jayne Kim and Celeste Pasillas, were, at all times mentioned in this complaint, an agent of the STATE BAR OF CALIFORNIA, employed as State Bar employees.

67.     CELESTE PASILLAS was acting under the supervision and control of JAYNE KIM.

68.     Defendants known as Doe 1 and Doe 2, were, at all times mentioned in this complaint, an agent of the CITY OF HUNTINGTON BEACH, employed as Huntington Beach Police officers.

69.     Defendants were, at all times mentioned in this complaint, acting in the course and scope of their employment with the Huntington Beach Police Department.

70.     Defendants were, at all times mentioned in this complaint, acting under color of state law.

71.     Defendants are sued in their official and individual capacity.

72.     As described above, at about 2:22PM, on or about November 10, 2014, defendant HBPD wrongfully and unlawfully (a) entered plaintiff's workplace; (b) stated that they were police officers, wearing uniforms; (c) questioned the receptionist and clerk about personal business of plaintiffs without plaintiff's consent; and (d) physically picked up and removed the client files from the office.

73.     When the receptionist protested that the client had to sign the release of chattel of form and be present, CELESTE PASILLAS from the STATE BAR OF CALIFORNIA called and directed the receptionist to release the files without having to sign the release of chattel form.

**COMPLAINT**
Albert v State Bar of California          SACV 14-1905

74.    Plaintiffs did not consent to defendants' entry or subsequent conduct, but protested until their protests were overcome by defendants' threats and shows of force. Defendants had no search or arrest warrant, and they did not arrest plaintiff.

75.    The HBPD were acting at the direction of or in coordination with STATE BAR OF CALIFORNIA, jointly.

76.    In acting as alleged in this complaint, Defendants CITY OF HUNTINGTON BEACH, STATE BAR OF CALIFORNIA, CELESTE PASILLAS, JAYNE KIM and Doe defendants violated plaintiff's right to be free of unreasonable searches and seizures under the Fourth and Fourteenth Amendments to the United States Constitution.

77.    As a direct and proximate result of defendants' actions, described in this complaint, plaintiff has suffered injury, loss, and damage, including loss of liberty, invasion of privacy, emotional distress, pain, suffering, and loss of use of property, violation of right to privacy and property damage or destruction.

78.    Plaintiff was also substantially injured in loss of profits and revenue as a direct and proximate result of defendants conduct.

79.    As a result of defendants' actions, plaintiff has suffered and will continue to suffer extreme hardship and actual and impending irreparable injury, loss, *and/or* damage in that defendants are still holding plaintiff's personal property including keys and important documents, perishables without plaintiff's consent and plaintiff is informed and believes and thereon alleges that defendants' investigation of plaintiff is continuing, and that defendants may conduct another unlawful search and seizure of plaintiff's property at any time.

80.    Plaintiff has no adequate or speedy remedy at law for the conduct of defendants described above. This action for injunctive relief is plaintiff's only means of

securing prospective relief, preventing further unlawful searches and seizures of plaintiff's property.

81. Plaintiffs also seek actual damages for the property converted or destroyed, and general damages that have been proximately caused by Defendants, conduct.

82. In acting as is alleged in this complaint, defendant acted knowingly, willfully, and maliciously, and with reckless and callous disregard for plaintiff's federally protected rights.

83. JAYNE KIM as the acting chief counsel for the STATE BAR OF CALIFORNIA was an officer, director and/or controlling manager.

84. The aforementioned conduct of defendant(s) was an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant(s) with the intention on the part of the defendant(s) of thereby depriving plaintiff of property or legal rights or otherwise causing injury, and was despicable conduct that subjected plaintiff to a cruel and unjust hardship in conscious disregard of plaintiff's rights, so as to justify an award of exemplary and punitive damages.

## SECOND CAUSE OF ACTION
## CIVIL RIGHTS VIOLATION
### (Against Defendants STATE BAR OF CALIFORNIA and CITY OF HUNTINGTON BEACH and DOES 1 -10)

85. Plaintiff incorporates paragraphs 1 through 84 as though fully incorporated herein.

86. This is an action brought under 42 U.S.C. § 1983 to recover damages against defendant for violation of plaintiff's *federal constitutional right* free speech, freedom of association and to petition for redress of grievances, guaranteed by the First and Fourteenth Amendments to the United States Constitution.

87. The jurisdiction of this Court on this cause of action is predicated on 28 U.S.C. §§ 1331 and 1343.

88. LENORE ALBERT is, and at all times mentioned in this complaint was, a citizen of the United States, and a resident of Orange County, California.

89. Plaintiff advocated and protested for homeowner rights.  After Occupy was disassembled, each home was used as a staging area to protest foreclosures caused by financial institutions and Wall Street.

90. A substantial part of the events giving rise to this action occurred in Los Angeles County and Orange County, California. Venue is therefore proper under 28 U.S.C. § 1391(b).

91. Plaintiffs are informed and believe and allege thereon that Defendants violated plaintiffs' constitutional rights under the First Amendment of the US Constitution and under the California Constitution from on or about March 2014 through the present by (1) targeting attorneys who represent homeowners in wrongful foreclosure cases; (2) sending police to their law offices unlawfully; and (3) have the police demand identification of the office personnel present, and rental circumstances surrounding the office without a warrant, consent or probable cause to do so in order to fulfill the STATE BAR OF CALIFORNIA'S own illegitimate aims.

92. The members of the Bar, like plaintiff, who represented homeowners and were asserting the First Amendment Rights to Freedom of Speech, Freedom of Association and/or right to pursue their occupation without fear of being harassed, were suddenly finding themselves a victim of harassment by the STATE BAR OF CALIFORNIA.

93. The STATE BAR OF CALIFORNIA would intimidate and harass the members of the State Bar representing homeowners by having police and sheriffs, the HBPD in this case, go to their law office to intimidate and embarrass the lawyer in front

of others present, although there was no consent, warrant or probable cause for the officers to be there.

94. After the members rights are violated, and files are taken without proper inventories or Special Masters present, the bar member find themselves fighting for their license on charges related to client files the State Bar took with regard to homeowner rights cases.

95. As such, the STATE BAR OF CALIFORNIA accomplishes its goals of suppressing and oppressing the First Amendment Rights of the plaintiffs through the use of the intimidation and force of the HBPD.

96. Plaintiff is informed and believes and alleges thereon that the HBPD officers went to the Property to demand identification of other staff in the office at the direction of or in coordination with STATE BAR OF CALIFORNIA.  As such the defendant CITY OF HUNTINGTON BEACH has so far insinuated itself into a position of interdependence with STATE BAR OF CALIFORNIA that it must be recognized as a joint participant in the challenged activity.

97. Defendant STATE BAR OF CALIFORNIA, JAYNE KIM, and CELESTE PASILLAS acts were discriminatory, targeted toward Plaintiff, or at the very least complicit. For example, Plaintiff had a taped voicemail message of attorney Mitchell Hannah who was opposing counsel, calling her client begging the client to sue Plaintiff for legal malpractice, telling him he could make more money that way. The client turned in a Complaint to the State Bar and with irrefutable proof of Attorney Hannah's voice on the voicemail, the State Bar said it was not him and refused to do anything at all.  Unlike Plaintiff, Mitchell Hannah does not represent home owners or advocate for their rights.  Discovery and investigation is continuing to determine if the State Bar instructed Hannah directly or indirectly to make that call to Plaintiff's client.

98. In acting as alleged in this complaint, defendant violated plaintiff's right to free speech, freedom of association, right to her occupation, and to petition for redress of grievances, guaranteed by the First and Fourteenth Amendments to the United States Constitution.

99. As a direct and proximate result of defendant's actions, described in this complaint, plaintiff has suffered injury, loss, *and/or* damage. Specifically, Plaintiff has been injured in their business and property in a variety of ways, including the following: plaintiffs were suppressed from asserting their right to Freedom of Association and feared representing homeowners, attending certain protests, occupations, or actions; they lost their personal property taken from them (seized) although they still believed in the message and that homeowners deserved representation for legitimate grievances.

100. As a further direct and proximate cause of the retaliation by defendants for plaintiff's assertion of her constitutional rights, plaintiff suffered severe emotional distress, anxiety, panic, insomnia, nose bleeds, headaches, stomach ailments, reclusiveness, shame, ridicule and humiliation.

101. Plaintiff also suffered business loss of revenue due to the tortious interference.

102. In acting as is alleged in this complaint, defendant acted knowingly, willfully, and maliciously, and with reckless and callous disregard for plaintiff's federally protected rights.

103. The aforementioned conduct of defendant(s) was an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant(s) with the intention on the part of the defendant(s) of thereby depriving plaintiff of property or legal rights or otherwise causing injury, and was despicable conduct that subjected plaintiff to a cruel and unjust hardship in conscious disregard of plaintiff's rights, so as to justify an award of exemplary and punitive damages.

**COMPLAINT**
Albert v State Bar of California          SACV 14-1905

### THIRD CAUSE OF ACTION

### Public Disclosure of Private Facts (Monopolization)

### (Against STATE BAR OF CALIFORNIA, JAYNE KIM, CELESTE PASILLAS and Does 1 through 10)

104.    Plaintiff incorporates in this cause of action all of the allegations in paragraphs 1 through 103 of this Complaint as though set forth in full herein.

105.    The Defendant STATE BAR OF CALIFORNIA, JAYNE KIM and CELESTE PASILLSA not only violated Plaintiff's rights as alleged above, but then after they violated Plaintiff's rights, they bragged about it to others. (Exhibit C)

106.    Devin Lucas an attorney representing the defendant in Kent v Fin City Foods, informed Plaintiff that he knew the State Bar had the HBPD at her office on or about November 10, 2014. (Plaintiff represented the plaintiffs, Bonnie Kent and Teri Sue Kent Love.)

107.    Devin Lucas sent this information by email to Jim Clark with the knowledge that Jim Clark would send this information off to Plaintiff's clients in the case, Bonnie Kent and Teri Sue Kent Love, which he did.

108.    Plaintiff was embarrassed, shocked and mortified.

109.    The fact that the HBPD was at the office - was confidential information of the type Defendant STATE BAR OF CALIFORNIA was not supposed to disseminate to others.

110.    Alternatively, the information was so highly sensitive that a reasonable person would be offended by its disclosure.

111.    Plaintiff is informed and believes and alleges thereon that Defendants STATE BAR OF CALIFORNIA, JAYNE KIM, and CELESTE PASILLAS widely distributed the fact that the HBPD was at Plaintiff's Office on or about November 10, 2014 to Devin Lucas and others.

112.   The presence of the HBPD at the office was not newsworthy, and not generally known to others who were not present.

113.   Upon learning of this Plaintiff sent a communication to the State Bar about the incident.

114.   Defendants never responded or did anything to contain the fact that the HBPD was at the Plaintiff's office with their knowledge on or about November 10, 2014.

115.   Instead plaintiff is informed and believes and alleges thereon Defendants STATE BAR OF CALIFORNIA, JAYNE KIM, and CELESTE PASILLAS further distributed the fact that the HBPD was at Plaintiff's Office on November 10, 2014 to attorney David Seal.

116.   As a further direct and proximate cause of the retaliation by defendants for plaintiff's assertion of her constitutional rights, plaintiff suffered severe emotional distress, anxiety, panic, insomnia, nose bleeds, headaches, stomach ailments, reclusiveness, shame, ridicule and humiliation.

117.   In acting as is alleged in this complaint, defendant acted knowingly, willfully, and maliciously, and with reckless and callous disregard for plaintiff's federally protected rights.

118.   The aforementioned conduct of defendant(s) was an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant(s) with the intention on the part of the defendant(s) of thereby depriving plaintiff of property or legal rights or otherwise causing injury, and was despicable conduct that subjected plaintiff to a cruel and unjust hardship in conscious disregard of plaintiff's rights, so as to justify an award of exemplary and punitive damages.

### FOURTH CAUSE OF ACTION
### False Light

**17**
### COMPLAINT
Albert v State Bar of California          SACV 14-1905

**(Against STATE BAR OF CALIFORNIA, JAYNE KIM, CELESTE PASILLAS and Does 1 through 10)**

119.   Plaintiff incorporates in this cause of action all of the allegations in paragraphs 1 through 118 of this Complaint as though set forth in full herein.

120.   Plaintiff is informed and believes and alleges thereon that Defendants STATE BAR OF CALIFORNIA, JAYNE KIM, and CELESTE PASILLAS widely distributed the fact that the HBPD was at Plaintiff's Office on or about November 10, 2014 to Devin Lucas, David Seal and others putting plaintiff in a false light that (1) plaintiff was "unstable;" (2) plaintiff was "under formal investigation;" and (3) there was a court order, warrant or other probable cause for the STATE BAR to send the HBPD to Plaintiff's law office to take files when that was not the case.

121.   The information was the type that would be highly offensive to a reasonable person.

122.   Plaintiff was embarrassed, offended, shocked, mortified and/or her feelings were hurt.

123.   As a further direct and proximate cause of the retaliation by defendants for plaintiff's assertion of her constitutional rights, plaintiff suffered severe emotional distress, anxiety, panic, insomnia, nose bleeds, headaches, stomach ailments, reclusiveness, shame, ridicule and humiliation.

124.   In acting as is alleged in this complaint, defendant acted knowingly, willfully, and maliciously, and with reckless and callous disregard for plaintiff's federally protected rights.

125.   The aforementioned conduct of defendant(s) was an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant(s) with the intention on the part of the defendant(s) of thereby depriving plaintiff of property or legal rights or otherwise causing injury, and was despicable conduct that

18

**COMPLAINT**

Albert v State Bar of California          SACV 14-1905

subjected plaintiff to a cruel and unjust hardship in conscious disregard of plaintiff's rights, so as to justify an award of exemplary and punitive damages.

Wherefore plaintiff demands judgment against defendants as set forth below.

### FIFTH CAUSE OF ACTION
### DEFAMATION
### (Against STATE BAR OF CALIFORNIA, CELESTE PASILLAS, JAYNE KIM AND DOES 1 – 10)

126.   Plaintiff incorporates in this cause of action all of the allegations in paragraphs 1 through 125 as though set forth in full herein.

127.   Defendant STATE BAR OF CALIFORNIA, JAYNE KIM, and CELESTE PASILLAS defamed plaintiff by telling a third party that she was (1) "unstable;" (2) had committed "unethical practices;" (3) "verbally abusive and hostile;" (4) incompetent; (5) under formal investigation with the State Bar.

128.   None of those assertions of fact made by the STATE BAR OF CALIFORNIA, JAYNE KIM or CELESTE PASILLAS were true.

129.   The third people who heard these statements reasonably believed them to be true.

130.   The STATE BAR OF CALIFORNIA, JAYNE KIM or CELESTE PASILLAS failed to use reasonable care in determining the truth or falsity of the statements when they made them.

131.   An attorney's best asset is their reputation, and their license to practice law.

132.   As a direct and proximate result of the defendants' statements to others, Plaintiff was injured in her property, business, trade, occupation or profession.

133.   Defendants' statements to others was a substantial factor in humiliating, hurting, shaming and mortifying plaintiff.

134.   Plaintiff's reputation was harmed.

135.   She was even banned from a listserve by other attorneys who practice in the same area of law.

136.   Alternatively, Defendants knew the falsity of the statements or had serious doubts as to the truth of the statements when they were made, entitling Plaintiff to presumed damages.

137.   Defendants JAYNE KIM and CELESTE PASILLAS acted with malice, fraud, or oppression entitling Plaintiff to punitive damages.

138.   Plaintiff is also entitled to injunctive relief prohibiting Defendants STATE BAR OF CALIFORNIA, JAYNE KIM, and CELESTE PASILLAS from continuing to spread these lies.

**SIXTH CAUSE OF ACTION**
**TORTIOUS INTERFERENCE WITH A CONTRACT**
**(Against STATE BAR OF CALIFORNIA, JAYNE KIM, CELESTE PASILLAS**
**and DOES 1 – 10)**

139.   Plaintiff incorporates in this cause of action all of the allegations in paragraphs 1 through 138 as though set forth in full herein.

140.   There was an existing contract between Plaintiff and other clients plaintiff represented.

141.   Defendant STATE BAR OF CALIFORNIA, JAYNE KIM and CELESTE PASILLAS knew of the contracts Plaintiff had with these third parties.

142.   Defendant STATE BAR OF CALIFORNIA, JAYNE KIM and CELESTE PASILLAS' conduct prevented performed or made performance more expensive or difficult in 2014 because the they kept disrupting deadlines and work flow by making last minute demands on the office which required going through thousands of pages of documents and through thousands of emails and other communications to attempt to

20
**COMPLAINT**
Albert v State Bar of California          SACV 14-1905

give the State Bar an accurate response to their strange hodgepodge queries and demands.

143.   The State Bar refused to extend any deadlines, although they would put that option in writing.

144.   This meant that Plaintiff would have to expend days-worth of time responding to the State Bar instead of working on clients cases.  Plaintiff specifically informed the State Bar that asking for every communication or every paper in many cases on these complex matter meant thousands of pages that needed to be transmitted, but the State Bar did not care and would demand the responses in full within days. It did not matter if appellate briefs or other litigation papers were due. The State Bar expected the office to work 40 hours per week on State Bar needs, which was more than unreasonable, it was harassing.  The State Bar was doing everything it could to drive Plaintiff out of business.

145.   Defendants conduct intended to disrupt the performance of the contracts and/or knew that disruption of performance was certain and substantially certain to occur.

146.   Plaintiff was harmed as a proximate and direct result of the Defendants' conduct.  Expenses tripled for the office while the income was decreased just from the interference alone.  Clients became worried about having their files at the office, worried that the State Bar would swoop in and take them, leaving them in the lurch. Clients were more anxious than ever that the office complete all work on their cases because they didn't trust other attorneys to handle their cases, which in most cases are complex.

147.   Defendant STATE BAR OF CALIFORNIA, JAYNE KIM and CELESTE PASILLAS' conduct was a substantial factor in causing that harm.

**COMPLAINT**
Albert v State Bar of California          SACV 14-1905

148.   Defendants JAYNE KIM and CELESTE PASILLAS acted with malice, fraud, or oppression entitling Plaintiff to punitive damages.

149.   JAYNE KIM and CELESTE PASILLAS were controlling managers, directors, officers, and/or directors of the STATE BAR OF CALIFORNIA thus warranting punitive damages against the STATE BAR OF CALIFORNIA, too.

## SEVENTH CAUSE OF ACTION
## UCL §17200 VIOLATION
## (Against STATE BAR OF CALIFORNIA)

150.   Plaintiff incorporates in this cause of action all of the allegations in paragraphs 1 through 149 as though set forth in full herein.

151.   Business & Professions Code §17200 prohibits any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business & Professions Code" and reaches past and one-time acts. *Id. See also*, *Stop Youth Addiction, Inc. v Lucky Stores, Inc.*, 17 Cal4th 553, 570 (1998).

152.   STATE BAR OF CALIFORNIA from 2009 forward continue to deceive and mislead the general public by announcing they have court orders allowing various Police Departments, including but not limited to the HBPD, to enter the law offices of its members, interview the staff, and search and seize personal property, when there is no valid search warrant, probable cause and no arrest was made.

153.   Such actions violate state law and as such, are an unlawful business practice, as particularly described above and incorporated herein.

154.   STATE BAR OF CALIFORNIA'S acts and practices of using local police to threaten and intimidate members of the bar without due process as a bargaining tool in order to coerce those bar members to stop taking homeowner cases or pursuing them

in court, associating with activists to chill free speech and temper any speaking out, and the advancement of law in homeowner's rights cases is an unlawful, unfair or fraudulent business practice.

155.   Plaintiff was eventually banned from her own colleagues and listserve due to the State Bar's conduct, although there was never any public record of a complaint or charges against the Plaintiff. (See Exhibit A – a true and correct copy of the State Bar profile for Lenore Albert).

156.   The harm to plaintiff and to members of the general public outweighs the utility of defendant's policy/practice, and consequently, STATE BAR OF CALIFORNIA'S practice constitutes an unfair business act or practice within the meaning of Business & Professions Code §17200.

157.   STATE BAR OF CALIFORNIA's policy/practice in this entire scheme for its own political aim is likely to mislead the general public, and did mislead the general public into believing that its aims against members of the bar who represented homeowners was legitimate when it was not, and was to hurt and did hurt homeowners, consequently, constitutes a fraudulent business act or practice within the meaning of Business & Professions Code §17200.

158.   As a direct and proximate result of Defendant STATE BAR OF CALIFORNIA'S joint conduct coordinated with the HBPD, plaintiffs had their business matters searched and seized without a warrant, probable cause or due process of law, with the threat that if those members did not stop representing homeowners in wrongful foreclosure cases they would lose their license not matter the merit of the case (losing a present or future interest in their property rights).

159.   Additionally, Plaintiffs were threatened if they sent the State Bar too many papers to defend themselves from the State Bar's accusations that they would have to

pay the cost of the State Bar having to review the papers being demanded, which was oppressive and substantially injurious to plaintiffs and the owners of such property.

160.   The State Bar also demanded Plaintiff to set aside work on her client's cases and deadlines to respond fully to their questions and requests within an unreasonably short time frame which they refused to extend.

161.   As a result of the aforementioned acts, plaintiffs and others similarly situated, have lost money or property and suffered injury in fact.

162.   By the time this complaint was filed approximately hundreds of members of the bar representing homeowners were either sanctioned or disbarred since 2009 in California in a disproportionate number compared to members practicing in other areas of the law.

163.   The sanctions were employed by employees who had no adequate skill, knowledge or training by the STATE BAR OF CALIFORNIA in the complex and evolving area of homeowner's rights.

164.   This resulted in intimidating and harassing most professionals from practicing in this area of law, leaving few attorneys like Plaintiff overburdened with too much demand.

165.   Whenever the STATE BAR OF CALIFORNIA would see an attorney move homeowner's rights ahead in favor the homeowner, the State Bar would simply call the HBPD who would then go to the scene and harass and intimidate the lawyer at his or her office.

166.   This conduct as described above was unfair in that it violated the public policy underlying First, Fourth and Fourteenth Amendment and Cal. Const. Art 1 §1 (right to pursue occupation).  The conduct was fraudulent because a reasonable consumer would believe that the rights being espoused by the HBPD were the

consumer's true rights and not the rights as written by the bank or STATE BAR OF CALIFORNIA facility.

167.    Finally, stopping this practice furthers the public interest.  Plaintiffs are therefore entitled to reasonable attorney's fees under section 1021.5 of the California Code of Civil Procedure.

Wherefore plaintiff demands judgment against defendants as set forth below.

### EIGHTH CAUSE OF ACTION
### Aiding and Abetting Violation of §17200
### (Against Does 1 through 10)

168.    Plaintiff incorporates in this cause of action all of the allegations in paragraphs 1 through 167 as though set forth in full herein.

169.    Plaintiff brings this claim on her own behalf and on behalf of each member of the Class described above.

170.    Defendants Doe 1 through 10 working at the Fusion Center in Los Angeles knew and were aware of Bank of America, STATE BAR OF CALIFORNIA, and HBPD's unlawful, unfair or deceptive business practices and untrue and misleading conduct alleged above by virtue of directing the foreclosures, concluding the foreclosures or becoming the beneficiary of the foreclosures on these properties but continued with the scheme for their own profit.

171.    Defendants Doe 1 through 10 aided and abetted/induced these violations by Bank of America in that they commanded or conducted the foreclosure on these properties during the moratorium period.

### EXEMPLARY DAMAGES

172.    Defendants' conduct was reprehensible.

173.    CELESTE PASILLAS and JAYNE KIM while working at the STATE BAR OF CALLIFORNIA acted with the intent to cause injury to Plaintiff as evidenced by having the former client call the HBPD and tell the HBPD a series

25
**COMPLAINT**
Albert v State Bar of California          SACV 14-1905

of untruths about Plaintiff in order to create a sympathetic barrier where the HBPD then questioned the staff working at Plaintiff's office, entered the office, took files and hauled them out of the office (physically) without a warrant or probable cause.

174.     CELESTE PASILLAS and JAYNE KIM's conduct was despicable and was one with a willful and knowing disregard of the rights or safety of another. Calling plaintiff "unstable" to the HBPD put Ms. Albert in danger if any other calls come from that office for help.

175.     CELESTE PASILLAS and JAYNE KIM knew that the former client they used to tell the police these things was associated with a person who had attempted to assault Ms. Albert last July and made threats to run over her dog with a car.

176.     They also knew that David Seal was associated with them, too.

177.     CELESTE PASILLAS and JAYNE KIM, and Does 1 through 10 acted with knowing disregard when the defendant was aware of the probable dangerous consequences of his, her, or its conduct and deliberately failed to avoid those consequences.

178.     CELESTE PASILLAS and JAYNE KIM, and Does 1 through 10 acted with "Oppression" in that they used their administrative position and used the HBPD to act as a law enforcement agency without any legal authority to do so. Defendant's conduct was despicable and subjected Ms. Albert to cruel and unjust hardship in knowing disregard of her rights.

179.     CELESTE PASILLAS and JAYNE KIM, and Does 1 through 10 conduct is so vile, base, or contemptible that it would be looked down on and despised by reasonable people.

**26**
**COMPLAINT**
Albert v State Bar of California         SACV 14-1905

180.    Defendants CELESTE PASILLAS and JAYNE KIM, and Does 1 through 10 intentionally misrepresented or concealed a material fact that there was no warrant, probable cause or legal authority to send the police to her business and did so intending to harm Ms. Albert.

181.    An employee is a "managing agent" if he or she exercises substantial independent authority and judgment in his or her corporate decision making such that his or her decisions ultimately determine corporate policy. CELESTE PASILLAS and JAYNE KIM, and Does 1 through 10 were managing agents of the STATE BAR OF CALIFORNIA.

182.    The malice, oppression, or fraud was conduct of one or more officers, directors, or managing agents of STATE BAR OF CALIFORNIA, who acted on behalf of STATE BAR OF CALIFORNIA.

183.    An officer, a director, or a managing agent of STATE BAR OF CALIFORNIA had advance knowledge of the unfitness of JAYNE KIM and CELESTE PASILLAS in investigating attorneys working in the complex and emerging area of homeowner's rights and employed her with a knowing disregard of the rights or safety of others.

184.    Alternatively, the conduct constituting malice, oppression, or fraud was authorized by one or more officers, directors, or managing agents of STATE BAR OF CALIFORNIA.

185.    Alternatively, one or more officers, directors, or managing agents of STATE BAR OF CALIFORNIA knew of the conduct constituting malice, oppression, or fraud and adopted or approved that conduct after it occurred. This occurred when Ms. Albert sent multiple emails and faxes to the State Bar board and officers which did not refute or respond at all. They adopted each and every

act, including sending the HBPD to the office without a warrant or probable cause or legal authority to do so.

186.   The conduct must be stopped. Attorneys must be allowed to freely practice in their profession without worrying that the State Bar is going to come after them without due process of law.

187.   Plaintiff has an unblemished record.  She has had multiple legal successes in the area of home owner's rights.

188.   Plaintiff files this complaint with regret, being forced to file and expose what has been going on because the Defendant's outrageous and extreme conduct has become too great to keep behind closed doors.

**PRAYER FOR RELIEF**

**WHEREFORE, Plaintiffs pray for judgment** against defendants, and each of them, as follows:

**First Cause of Action**

1. For a preliminary injunction ordering defendants, and their officers, agents, employees, successors, and attorneys, and all those in active concert or participation with defendants, to refrain from entering law offices and taking files without a warrant or probable cause; and to refrain from interviewing law office personnel without a warrant, probable cause or consent.

2. For actual damages;

3. For general damages;

4. For a permanent injunction permanently enjoining and restraining defendants, and their officers, agents, employees, successors, and attorneys, and all those in active concert or participation with defendants from similar conduct in the future;

**28**

**COMPLAINT**

Albert v State Bar of California          SACV 14-1905

5. Costs;

6. Attorney fees

7. Punitive damages

8. Any further relief the court would deem appropriate and just.

**Second Cause of Action**

1. For a preliminary injunction ordering defendants, and their officers, agents, employees, successors, and attorneys, and all those in active concert or participation with defendants, to refrain from harassing plaintiff or demanding more records and responses with threat of cases, investigations and disbarment and to refrain immediately and pending final hearing and resolution of this action from the same.

2. For a permanent injunction permanently enjoining and restraining defendants, and their officers, agents, employees, successors, and attorneys, and all those in active concert or participation with defendants from similar conduct in the future.

3. For actual damages;

4. For general damages;

5. Costs;

6. Attorney fees;

7. Punitive damages;

8. Any further relief the court would deem appropriate and just.

**Third, Fourth, and Fifth Causes of Action**

1. For a preliminary injunction restraining defendants, and their officers, agents, employees, successors, and attorneys, and all those in active concert or participation with defendants, from publicly disclosing

**COMPLAINT**

Albert v State Bar of California          SACV 14-1905

plaintiff's private facts, putting plaintiff in a false light, and or defaming plaintiff;

2.  For a permanent injunction permanently enjoining and restraining defendants, and their officers, agents, employees, successors, and attorneys, and all those in active concert or participation with defendants from similar conduct in the future.

3.  For actual damages;

4.  For general damages;

5.   Punitive damages;

6.  Costs;

7.  Attorney fees:

8.  Any further relief the court would deem appropriate and just.

**Sixth Cause of Action**

1.  For a preliminary injunction restraining defendants, and their officers, agents, employees, successors, and attorneys, and all those in active concert or participation with defendants, from tortuously interfering in Plaintiff's business affairs and cases where she represents others;

2.  For a permanent injunction permanently enjoining and restraining defendants, and their officers, agents, employees, successors, and attorneys, and all those in active concert or participation with defendants from similar conduct in the future.

3.  For actual damages;

4.  For general damages;

5.  Punitive damages;

6.  Costs;

7.  Attorney fees:

**COMPLAINT**
Albert v State Bar of California          SACV 14-1905

8.  Any further relief the court would deem appropriate and just.

**Seventh and Eighth Cause of Action**

1.  Pursuant to Business and Professions Code sections § 17203 and §17535, and pursuant to the equitable powers of this Court, plaintiff prays that the defendants be preliminarily and permanently enjoined from committing any acts of unfair competition in violation of § 17200, including, but not limited to, the violations alleged herein.

2.  Pursuant to Business and Professions Code sections § 17203 and §17535, and pursuant to the equitable powers of this Court, plaintiff prays that the defendants are ordered to restore to the general public all funds or property acquired by means of any act or practice declared by this Court to be unlawful or fraudulent or to constitute unfair competition under Business & Professions Code §17200 et seq., or untrue or misleading advertising under §17500 et seq.

3.  Restitution of property, title and/or identity to plaintiffs and the Class;

4.  Disgorgement of profits;

5.  Costs;

6.  Attorneys' fees;

7.  Such other and further relief as this Court finds necessary and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial as to those issues that are not equitable in nature.

Dated: December 3, 2014          LAW OFFICES OF LENORE ALBERT

By: s/Lenore L. Albert_____
LENORE L. ALBERT, ESQ.
Plaintiff, pro se

**31**
**COMPLAINT**
Albert v State Bar of California          SACV 14-1905

Home » Public » Attorney Search » Attorney Profile

## ATTORNEY SEARCH

### Lenore LuAnn Albert - #210876

**Current Status:  Active**

This member is active and may practice law in California.

See below for more details.

#### Profile Information

The following information is from the official records of The State Bar of California.

**Bar Number:** 210876

**Address:**
Law Ofc Lenore Albert
7755 Center Ave Ste 1100
Huntington Beach, CA 92647
Map it

**Phone Number:** (714) 373-2264
**Fax Number:** (419) 831-3376
**e-mail:** lenalbert@interactivecounsel.com

**Undergraduate School:**
California St Univ Long Beach; CA

**Law School:**
McGeorge SOL Univ of the Pacific; CA

**County:** Orange
**District:** District 4

**Sections:**
Antitrust & Unfair Competition

**ATTORNEY PROVIDED INFORMATION**
*The information below was provided by the attorney and has not been verified or monitored. The State Bar does not recommend or endorse any attorney.*



**Practice Area(s):**
Appellate Practice
Class Actions
Contracts
Litigation

**Other Language(s) Spoken by the Law Office Staff:**
Spanish

**Website:**
www.InteractiveCounsel.com

#### Status History

| Effective Date | Status Change |
|---|---|
| Present | Active |
| 12/5/2000 | Admitted to The State Bar of California |

Explanation of member status

#### Actions Affecting Eligibility to Practice Law

**Disciplinary and Related Actions**

Overview of the attorney discipline system.

This member has no public record of discipline.

**Administrative Actions**

This member has no public record of administrative actions.

Start New Search »

EX A

THE STATE BAR OF CALIFORNIA

Tuesday, December 2, 2014

## ATTORNEY SEARCH

### Lenore LuAnn Albert - #210876

### Current Status:  Active

This member is active and may practice law in California.

See below for more details.



### Profile Information

*The following information is from the official records of The State Bar of California.*

**Bar Number:** 210876

**Address:**
Law Ofc Lenore Albert
7755 Center Ave Ste 1100
Huntington Beach, CA 92647
Map it

**Phone Number:** (714) 372-2264
**Fax Number:** (419) 831-3376
**e-mail:** lenalbert@interactivecounsel.com

**Undergraduate School:**
California St Univ Long Beach; CA

**Law School:**
McGeorge SOL Univ of the Pacific; CA

**County:** Orange
**District:** District 4
**Sections:**
Antitrust & Unfair Competition

**ATTORNEY PROVIDED INFORMATION**
*The information below was provided by the attorney and has not been verified or monitored. The State Bar does not recommend or endorse any attorney.*

**Practice Area(s):**
Appellate Practice
Class Actions
Contracts
Litigation

**Other Language(s) Spoken by the Law Office Staff:**
Spanish

**Website:**
www.InteractiveCounsel.com

### Status History

| Effective Date | Status Change |
| --- | --- |
| Present | Active |
| 12/5/2000 | Admitted to The State Bar of California |

Explanation of member status

### Actions Affecting Eligibility to Practice Law

**Disciplinary and Related Actions**

Overview of the attorney discipline system.

This member has no public record of discipline.

**Administrative Actions**

This member has no public record of administrative actions.

Start New Search »

Contact Us   |   Site Map   |   Privacy Policy   |   Notices   |   Copyright   |   Accessibility   |   FAQ

Copyright © 2014, The State Bar of California

Monday, November 10, 2014

THE STATE BAR OF CALIFORNIA

## ATTORNEY SEARCH

## Lenore LuAnn Albert - #210876

## Current Status: Active

This member is active and may practice law in California.

See below for more details.

## Profile Information

*The following information is from the official records of The State Bar of California.*

**Bar Number:** 210876

**Address:**
Law Ofc Lenore Albert
7755 Center Ave Ste 1100
Huntington Beach, CA 92647
Map it

**Phone Number:** (714) 372-2264
**Fax Number:** (419) 831-3376
**e-mail:** lenalbert@interactivecounsel.com

**Undergraduate School:**
California St Univ Long Beach; CA

**Law School:**
McGeorge SOL Univ of the Pacific; CA

**County:** Orange
**District:** District 4

**Sections:**
Antitrust & Unfair Competition



**ATTORNEY PROVIDED INFORMATION**
*The information below was provided by the attorney and has not been verified or monitored. The State Bar does not recommend or endorse any attorney.*

**Practice Area(s):**
Appellate Practice
Class Actions
Contracts
Litigation

**Other Language(s) Spoken by the Law Office Staff:**
Spanish

**Website:**
www.InteractiveCounsel.com

## Status History

| Effective Date | Status Change |
| --- | --- |
| Present | Active |
| 12/5/2000 | Admitted to The State Bar of California |

Explanation of member status

## Actions Affecting Eligibility to Practice Law

**Disciplinary and Related Actions**

Overview of the attorney discipline system.

This member has no public record of discipline.

**Administrative Actions**

Case 8:14-cv-01905-DOC-AN   Document 1   Filed 12/03/14   Page 36 of 45   Page ID #:36

This member has no public record of administrative actions.

Start New Search »

Contact Us  |  Site Map  |  Privacy Policy  |  Notices  |  Copyright  |  Accessibility  |  FAQ

Copyright © 2014, The State Bar of California





EX B







State Bar - Cindy Brown at...    1:36    5:00



State Bar - Cindy Brown at...    1:16    5:00



# FAX COVER SHEET

| TO | |
|---|---|
| COMPANY | |
| FAX NUMBER | 14198313376 |
| FROM | Devin Lucas |
| DATE | 2014-11-13 23:38:47 GMT |
| RE | Settlement Communication - Bonnie Kent, et. al. v. Fin City Foods, Inc., et. al. |

## COVER MESSAGE

November 13, 2014
VIA E-Mail and Facsimile

Attn:    Lenore L. Albert
Pages:  3

Re:     Bonnie Kent, et. al. v. Fin City Foods, Inc., et. al.
Settlement Communication
Client:              Fin City Foods, Inc. and James Clark
Our File Number:   3489.004

Dear Ms. Albert,

Please see attached.

-Devin

Law Office of Devin R. Lucas
devinrlucas.com | devin@devinrlucas.com
949.478.1623 office | 888.667.6038 fax

2901 West Coast Highway Suite 200
Newport Beach | California | 92663-4023

EX C
WWW.MYFAX.COM

# LAW OFFICE OF DEVIN R. LUCAS

DEVINRLUCAS.COM | DEVIN@DEVINRLUCAS.COM | OFFICE 949.478.1623 | FAX 888.667.6038
2901 WEST COAST HIGHWAY SUITE 200 | NEWPORT BEACH | CALIFORNIA | 92663-4023

November 13, 2014

### PRIVILEGED COMMUNICATION PURSUANT TO
### CAL. EVID. CODE §§ 1119 AND 1152

VIA E-Mail and Facsimile
lenorealbert@msn.com

Lenore L. Albert
Law Offices of Lenore Albert
7755 Center Ave., Suite 1100
Huntington Beach, CA 92647

Re:   ***Bonnie Kent, et. al. v. Fin City Foods, Inc., et. al.***
      **Settlement Communication**
      **Client:**              **Fin City Foods, Inc. and James Clark**
      **Our File Number:**     **3489.004**

Dear Ms. Albert,

This letter follows our earlier unanswered settlement communications. Once again, Fin City
would very much like to know what Plaintiffs are seeking in this litigation. To-date, we have
utterly no idea. There have been no demands made and the Pleadings are utterly nonsensical.
While there is some language in the Pleadings seeking appointment to positions; that is wholly
moot given the Shareholder-approved sale of all assets and ongoing dissolution.

We understand that the California State Bar and the Huntington Beach Police Department were
at your office recently to recover various files you have unlawfully withheld from prior client(s).
This is in conjunction with various ongoing California State Bar investigations as to your
practice. We understand you have several restraining against you personally. We understand
that you are pursuing various frivolous litigations in your own name against several of your
former clients, former employees, former friends and former relationships, for, *inter alia*, various
on-line reviews that have been left warning other potential clients about your reportedly illicit
practices. We understand that you have threatened the publisher of Lexis with litigation over the
headnotes that appear on several recent appellate decisions in which your clients have lost their
homes. We understand you have threatened the Chief Trial Counsel of the California State Bar
with litigation for the California State Bar's ongoing investigations of your practices and the
numerous formal complaints that have been filed against you.

We reference these issues because it would seem apparent that your practice might soon be
closing, thus leaving your clients without representation. Accordingly, it would seem utmost

albert.settlement.11.13.14.docx

Lenore Albert
November 13, 2014
Page 2 of 2

prudent to resolve this matter now, prior to your clients being again forced to seek new counsel
(their fourth) to pursue this utterly frivolous litigation.

While I completely understand the disappointment that Fin City was not worth more money at its
conclusion, those are the facts that were discussed in-depth before and during the December
2013 Shareholder meeting which culminated in the *unanimous* decision to sell all assets for
$700,000.00. Specific terms and conditions of any such transfer of corporate assets are within
the discretion of the board. (California <u>Corporations</u> Code §§ 1001(c), 3100(c); See Also –
Friedman and Fotenos, <u>Corporations</u>, The Rutter Group § 8:588.) So the fact that your clients
are disappointed with the $500,000.00 note and $200,000.00 cash is simply not actionable. (<u>Id.</u>)
Perhaps your clients may have a claim against their initial counsel, who was preset at the
meeting and advised your clients accordingly prior to the unanimous vote, if indeed they feel
they made a bad decision in hindsight.

So, where does that leave the litigation? Fin City's remaining finances will be decimated by
Plaintiffs' actions and all will be left with nothing. Especially if (in some remote universe) you
prevail to disqualify me (presuming you are still a licensed attorney at that time), Fin City will
only be forced to hire a new counsel, likely at a much greater hourly rate than mine, who will
spend time and money reviewing the matter, and then proceeding with a vigorous defense.

You have all accounting data in your and your clients' possession. Your clients need to dismiss
this litigation now, saving Fin City's remaining finances for appropriate 50/50 distribution.
Please contact my office to discuss a waiver of costs and fees in exchange for a dismissal with
prejudice, 1542 waiver, etc.

All rights are preserved.

Sincerely,

Devin R. Lucas

albert.settlement.11.13.14.docx



# Next Buzzword for Mortgage Servicing May Be 'Remod'

American Banker  |  Thursday, April 21, 2011

By Kate Berry

Lenore Albert, a plaintiff's lawyer in Huntington Beach, Calif., says the consent orders federal regulators recently issued against the largest mortgage servicers gave her "another tool" to fight foreclosures.

On April 15, two days after the enforcement actions came out, Albert won a court order blocking Aurora Loan Services from holding foreclosure sales on six homes in Orange County. In their request for a restraining order, her clients claimed they were harmed by so-called dual tracking, in which Aurora began foreclosure proceedings at the same time it was evaluating the borrowers for loan modifications. The consent orders bar this practice.

The borrower plaintiffs "acted diligently upon issuance of the [consent] orders," wrote Judge James V. Selna of the U.S. District Court for the Central District of California in Santa Ana in his restraining order.

Servicers can expect more such diligence nationwide.

One likely result of the orders, some industry observers say, is that thousands of borrowers, many of them currently in litigation against servicers, will get another shot at a loan modification.

"There will be a lot of remodifications for those [borrowers] that fell out of a modification the first time," said Art Tyszka, director of document services at Wolters Kluwer Financial Services, which has been hired by several of the largest servicers to conduct loss-mitigation efforts.

"Several hundred thousand loans at a minimum" will get one more chance, Tyszka said.

"The words 'loss mitigation' and 'loan modification' appear no less than a hundred times in the consent orders, so it's logical to assume that the regulators are keenly interested in as many borrowers as possible being put back into loan workouts."

Sean O'Toole, the chief executive of ForeclosureRadar.com, a Discovery Bay, Calif., data company, said cancellations of foreclosure actions are on track to increase 58% this month compared with the first three months of the year combined????.

But the reasons could be varied and not just because of the consent orders.

In California, for example, servicers can postpone a foreclosure notice for up to a year. Some of the cancellations may be attributed to short sales, or to a reluctance on the part of servicers to liquidate real estate assets while housing prices are still dropping, O'Toole said.

Albert filed her suit, which seeks class-action status, in January against Aurora and Deutsche Bank (the securitization trustee for the mortgages).

It claims Aurora did not apply the trial payments to the borrowers' mortgages but instead put them into a "suspense account" that incurred more fees, interest and expenses.

Aurora and its lawyers did not return calls seeking comment, but in court papers the servicer said it "made countless efforts to keep [the] plaintiffs in their homes, exploring loss-mitigation options with them, for sometimes years on end."

Albert estimated that 10 suits seeking class-action status have been filed against other servicers specifically for "dual-tracking."

The consent order is forcing servicers back to the negotiating table, she said.

"Some of these loans are now getting remodified."

Jeffrey Naimon, a partner at the law firm BuckleySandler LLP in Washington who represents banks, was skeptical about predictions of a remodification wave.

Servicers, he said, are more focused on understanding the consent order's myriad requirements, including the federal and state requirements for a foreclosure file review.

"The idea of remodifying loans has not come up," Naimon said. "What they're looking for servicers to do, is to see if they made appropriate loss mitigation available, and to provide remediation if consumers suffered financial harm."

Gerald Alt, the president of LOGS Group LLC, a Northbrook, Ill., network of foreclosure and loss-mitigation attorneys, said servicers may be hampered by the sheer scope of the consent orders.

"One problem is that if the consent orders say they haven't serviced the loans well enough, what is the standard?" Alt said. "To some extent, there is a little bit of head-scratching on what they're going to do, who are they going to pick for the third-party review, how are they going to staff it, and what are the standards."

More cynical industry observers say federal regulators issued the consent orders before a settlement was reached with state attorneys general, giving banks "cover," so they could ultimately provide third-party reviews showing borrowers were not harmed.

Whether a significant number of borrowers will be helped remains unknown.

Herb Blecher, a senior vice president at LPS Applied Analytics, a unit of Lender Processing Services Inc., said that even before the consent orders, servicers have been remodifying loans in significant numbers — but many have redefaulted, which has led to a buildup of loans that have not yet gone to a foreclosure sale.

"There is this churn going on, where it's is in foreclosure, they pull it out and work on loss mitigation, and then they put it back in," Blecher said.

Through March, 1.9 million properties were 90 days or more delinquent but had not yet received a notice of foreclosure, LPS found.

Another 2.2 million properties were in the foreclosure pre-sale inventory.

A major problem is that for 30% of loans currently in foreclosure, borrowers have not made a payment in more than two years, Blecher said.

As Alt put it, "they may try to remodify borrowers but some are in foreclosure and have not made a payment in 24 months."

© 2011 American Banker and SourceMedia, Inc. All Rights Reserved.
SourceMedia is an Investcorp company. Use, duplication, or sale of this service, or data
contained herein, except as described in the Subscription Agreement, is strictly
prohibited.

For information regarding Reprint Services please visit:
http://www.americanbanker.com/aboutus/reprint-services-rates.html